UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  S2-4:08CR244 RWS |
| | ) | (FRB) |
| RUSSELL GENDRON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is before the Court on defendant Russell
Gendron's Motion to Dismiss [Count II] Based on Strict Scrutiny
(Doc. #96); and Motion to Declare 18 U.S.C. § 1466A
Unconstitutional as Applied to Fictional Works or, in the
Alternative, to Dismiss the Indictment for Failure to Allege a
Crime (Doc. #98).  All pretrial motions were referred to the
undersigned United States Magistrate Judge pursuant to 28 U.S.C. §
636(b) for appropriate disposition.

**I.  Procedural History**

On April 24, 2008, defendant Russell Gendron was charged
by indictment with possession of child pornography, in violation of
18 U.S.C. § 2252A(a)(5)(B).  On August 13, 2008, the grand jury
returned a superseding indictment adding a charge of possession of
obscene visual representations of minors engaged in sexually
explicit activity, in violation of 18 U.S.C. § 1466A(b)(1).  On
September 10, 2008, the defendant, through counsel, filed a Motion

to Dismiss Indictment arguing that the statute under which he was charged with possession of obscene materials, 18 U.S.C. § 1466A(b)(1), was unconstitutional because, first, it criminalized legal conduct, that is, the possession of obscene material not depicting actual minors; and second, that the statute was vague and overbroad in violation of the First Amendment. Upon completion of briefing by the parties, arguments were heard on the motion on November 6, 2008.

On February 9, 2009, the undersigned entered a Memorandum, Report and Recommendation addressing the arguments raised in defendant's Motion to Dismiss, and determined the challenged statute not to be unconstitutional on the bases urged by the defendant. The undersigned therefore recommended to the district court that defendant's Motion to Dismiss Indictment be denied, and the parties were given until February 20, 2009, within which to file written objections to this recommended disposition. The Honorable Rodney W. Sippel thereafter set the matter for trial for April 6, 2009.

On February 20, 2009, the defendant requested from the district court additional time to file his objections to the undersigned's recommendation, and was granted to March 9, 2009, by which to do so. On March 9, 2009, the defendant again requested additional time to file objections, and he was granted to March 12, 2009, by which to do so. Trial of this matter was thereafter

continued to May 4, 2009.

On March 12, 2009, defendant filed a motion directed to the undersigned United States Magistrate Judge to reconsider the previous Memorandum, Report and Recommendation to the extent it recommended that the Motion to Dismiss Indictment be denied. Defendant reasserted his arguments that the statute was unconstitutional due to vagueness and overbreadth, and further argued that the interstate commerce element of the statute to bring the offense within federal jurisdiction was too tenuous to establish such jurisdiction. Upon the completion of briefing by the parties, the undersigned entered a Supplemental Report and Recommendation on April 22, 2009, recommending that defendant's Motion for Reconsideration be denied. The parties were given until April 29, 2009, within which to file written objections to this recommended disposition. Upon requesting leave for additional time, defendant filed objections to this Supplemental Report and Recommendation on May 8, 2009. The government responded to defendant's objections on May 15, 2009.

In the meanwhile, upon the request of the defendant, the trial of this matter was reset to July 20, 2009. (See Doc. #67.)

On May 28, 2009, prior to any determination by the district court as to the recommended disposition of defendant's various pretrial motions and related objections, the grand jury returned a second superseding indictment wherein defendant was

charged in Count I with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and in Count II with receipt of obscene visual representations of minors engaged in sexually explicit activity, in violation of 18 U.S.C. § 1466A(a)(1). By way of this second superseding indictment, defendant was no longer charged under 18 U.S.C. § 1466A(b)(1) with *possession* of obscene visual representations of minors. Defendant was granted to June 12, 2009, to file any additional pretrial motions on the second superseding indictment. Upon his request, defendant was granted additional time to June 26, 2009, to file such motions.

On June 26, 2009, defendant filed various pretrial motions, including the instant motions to dismiss and to declare § 1466A unconstitutional. The government responded to said motions on July 6, 2009, to which defendant replied on July 20, 2009. Upon request by the parties to be heard on various of the motions, and upon notification by defense counsel of her availability (see Doc. #116), the motions were set for hearing, and were heard, before the undersigned on August 11, 2009. The instant motions are now fully briefed, and the parties had an opportunity to be fully heard on the issues raised therein.

## II. Discussion

The statute under which defendant is charged here, 18 U.S.C. § 1466A(a)(1), makes it a criminal offense for "[a]ny person

who, in a circumstance described in subsection (d), knowingly produces, distributes, receives, or possesses with intent to distribute, a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that –- (1)(A) depicts a minor engaging in sexually explicit conduct; and (B) is obscene[.]"  It is not a required element of the offense that the minor depicted actually exist.  18 U.S.C. § 1466A(c).  Subsection (d) of the statute requires a nexus to interstate commerce which may include the visual depiction(s) having been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer.  18 U.S.C. § 1466A(d)(4).  In Count II of the second superseding indictment, the defendant here is alleged to have violated 18 U.S.C. § 1466A(a)(1) by his knowing receipt of one or more of such visual depictions.  The charge then sets out six specific computer-generated images which had traveled in interstate commerce that the defendant is alleged to have received to bring his conduct within the statute.

A.   Motion to Dismiss [Count II] Based on Strict Scrutiny
     (Doc. #96)

        In the instant motion to dismiss, defendant contends that 18 U.S.C. § 1466A contains a content-based restriction on speech, namely, that the visual depictions be obscene, and thus that the Court must undergo a strict-scrutiny analysis pursuant to which the government bears the burden of demonstrating that the law is narrowly tailored to promote a compelling government interest.

Defendant argues that until there is an adjudication that the challenged material allegedly received by him is obscene, such material is presumed to be protected by the First Amendment and thus that the law restricting such protected material is subject to strict scrutiny.[1]

The freedom of speech protected by the First Amendment is a fundamental right. See Chaplinsky v. New Hampshire, 315 U.S. 568, 570 (1942). However, "it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise *any* Constitutional problem." Id. at 571-72 (emphasis added). Obscenity is one such narrowly limited class of speech, and thus enjoys no First Amendment protection. Id. at 572; Miller v. California, 413 U.S. 15, 23-24 (1973); see also Republican Party of Minn. v. White, 416 F.3d 738, 749 n.4 (8th Cir. 2005). Further, "commerce in obscene material is unprotected by any constitutional doctrine of privacy." Paris Adult Theatre I v. Slaton, 413 U.S. 49, 69 (1973) (citing United States v. Orito, 413 U.S. 139, 141-43 (1973); United States v. 12 200-Foot Reels of Super 8mm. Film, 413 U.S. 123, 126-29 (1973)).

---

[1]The undersigned notes that, although charged with a violation of 18 U.S.C. § 1466A in the first superseding indictment, defendant's pretrial motions directed to that indictment did not raise the instant strict scrutiny argument.

In <u>Miller</u>, the Supreme Court recognized that "statutes designed to regulate obscene materials must be carefully limited[,]" and thus set forth a three-part test that delineates between obscenity and protected speech.

> As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct . . . [and] which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

<u>Miller</u>, 413 U.S. at 24.

A valid obscenity statute that follows the three-part <u>Miller</u> definition of obscenity, therefore, does not punish the exercise of a fundamental right. See <u>Ripplinger v. Collins</u>, 868 F.2d 1043, 1050 (9th Cir. 1989). Federal statutes, including § 1466A, incorporate <u>Miller</u>'s definition of obscenity to separate unprotected obscenity from protected speech. See <u>United States v. Schales</u>, 546 F.3d 965, 973 (9th Cir. 2008) ("[F]ederal statutes dealing with obscenity are construed to incorporate the <u>Miller</u> standards[.]"), <u>cert. denied</u>, ___ U.S. ___, 129 S. Ct. 1397 (2009). As such, "[t]he <u>Miller</u> obscenity test . . . serves as a 'firewall to guard against the constitutionally protected speech being swept within the ambit of the conduct criminalized by the statute[].'" <u>Id.</u> at 972 (quoting <u>United States v. Whorley</u>, 386 F. Supp. 2d 693, 697 (E.D. Va. 2005), <u>aff'd</u>, 550 F.3d 326 (4th Cir. 2008)). Because

the material prohibited by § 1466A is properly limited to obscene

material as defined in <u>Miller</u>, no constitutionally protected

fundamental right is implicated by its proscription.  Strict

scrutiny is thus not appropriate.

> It is true enough that content-based
> regulations of speech are presumptively
> invalid.  We have recognized, however, that
> the rationale of the general prohibition . . .
> is that content discrimination raises the
> specter that the Government may effectively
> drive certain ideas or viewpoints from the
> marketplace.  And we have identified numerous
> situations in which that risk is
> inconsequential, so that strict scrutiny is
> unwarranted.  For example, speech that is
> obscene or defamatory can be constitutionally
> proscribed because the social interest in
> order and morality outweighs the negligible
> contribution of those categories of speech to
> the marketplace of ideas.

<u>Davenport v. Washington Educ. Ass'n</u>, 551 U.S. 177, 188 (2007)
(internal quotation marks and citations omitted).

Defendant argues, however, that the Supreme Court's

decision in <u>Lawrence v. Texas</u>, 539 U.S. 558 (2003), demonstrates

that "[t]he continued viability of the morality justification for

obscenity law is in substantial doubt[.]"  (Deft.'s Mot. to

Dismiss, Doc. #96 at p. 6.)  In <u>Lawrence</u>, the Supreme Court held

that a Texas statute which made it a crime for two persons of the

same sex to engage in certain intimate sexual conduct, was

unconstitutional as applied.  The Court reasoned that the right to

liberty under the Due Process Clause encompassed an individual's

right to engage in private sexual conduct free from government
intervention.    Lawrence, 539 U.S. at 578.[2]    In reaching this
decision, the Lawrence Court referred to Justice Stevens' dissent
in Bowers v. Hardwick, 478 U.S. 186 (1986), wherein he stated that
"the fact that the governing majority in a State has traditionally
viewed a particular practice as immoral is not a sufficient reason
for upholding a law prohibiting the practice[.]"  Bowers, 478 U.S.
at 216 (Stevens, J., dissenting) (quoted in Lawrence, 539 U.S. at
577).   The defendant here argues that the morality specter raised
in Lawrence requires the constitutionality of obscenity statutes,
including § 1466A, to be reexamined.

> Even if there were merit to [defendant's]
> argument that the Supreme Court's later
> decisions have somehow weakened the
> precedential value of [the older case], [this
> Court] may not precipitate its decline.  The
> Supreme Court itself has admonished lower
> courts to follows its directly applicable
> precedent, even if that precedent appears
> weakened by pronouncements in subsequent
> decisions[.]

United States v. Extreme Assocs., Inc., 431 F.3d 150, 156 (3d Cir.
2005) (reversing district court's judgment that federal obscenity
statutes impinged upon a fundamental right and failed strict
scrutiny analysis) (indented quotation and citation omitted).

---

[2]It is significant to note that Lawrence did not hold that all
private sexual conduct constitutes a protected liberty interest.
The Lawrence Court specifically noted that the case before it did
not involve minors, persons who might be injured or coerced or who
are situated in relationships where consent might not easily be
refused, public conduct, or prostitution.  The Court further noted
that the case also did not involve whether the government must give
formal recognition to any relationship that homosexual persons seek
to enter.  Lawrence, 539 U.S. at 578.

In light of the well-established Supreme Court precedent declaring obscenity to enjoy no First Amendment protection, and commerce relating thereto to likewise enjoy no constitutional protection, the undersigned declines defendant's invitation to renounce the Supreme Court's previous decisions governing obscenity.

To the extent defendant argues that alleged obscene material enjoys First Amendment protection until a fact-finder adjudicates it to be obscene under the three-part Miller test, defendant's argument is misplaced. The three-part Miller test provides the demarcation line between what is obscene and what is not. If the material meets the Miller test, it is, and always was, obscene. The nature of the material itself does not change with a jury's or court's adjudication.

No fundamental right is implicated by Congress's regulation of commerce in obscene materials. As such, strict scrutiny analysis of 18 U.S.C. § 1466A is not warranted. Defendant's motion to dismiss Count II of the second superseding indictment under strict scrutiny should therefore be denied.

B.    Motion to Declare 18 U.S.C. § 1466A Unconstitutional as Applied to Fictional Works or, in the Alternative, to Dismiss the Indictment for Failure to Allege a Crime (Doc. #98)

In the instant motion, defendant contends that 18 U.S.C. § 1466A is unconstitutional inasmuch as the images proscribed arise out of pure fantasy in that they do not involve the portrayal of actual children. Defendant argues that § 1466A's attempt to

- 10 -

criminalize virtual images of imaginary children "strikes at the very heart of the right to Freedom of Speech guaranteed by the First Amendment to the United States Constitution[]" (Deft.'s Mot. to Declare § 1466A Unconst., Doc. #98 at p. 1), and thus punishes him for exercising his First Amendment right to "view the[] expressions of ideas generated by others." (Id. at p. 4.) Defendant argues that, because First Amendment rights of freedom of expression are affected, the Court must "expeditiously review the validity and constitutionality" of such action and urges the Court to make a pretrial adversarial determination of obscenity for the six images he is alleged to have received.[3]

Defendant's argument is premised upon his assertion that

_____

[3]The undersigned notes that in his motion, defendant asserts that the Court has an obligation to resolve First Amendment constitutional issues "at the earliest possible point in the proceedings," and cites motions to dismiss under Fed. R. Crim. P. 12 as the appropriate tool by which to seek such expeditious review. (Deft.'s Mot. to Declare § 1466A Unconst., Doc. #98 at pp. 2-6.) Notably, the claims raised in the instant motion could have been, but were not, raised in relation to the first superseding indictment, wherein the defendant was charged with violating 18 U.S.C. § 1466A(b)(1) by his alleged possession of visual depictions depicting minors engaging in sexually explicit conduct and that are obscene. In the second superseding indictment, he presently is charged under § 1466A(a)(1) for his alleged receipt of said visual depictions. In the instant motion, defendant challenges the constitutionality of the statute as it relates to the nature of the material, and not his alleged conduct in relation to the material (possession versus receipt). Although the nature of the material in the second superseding indictment, that is, visual depictions that depict a minor engaging in sexually explicit conduct and that are obscene, is the same as that alleged in the first superseding indictment, defendant did not raise the instant constitutional claims in his various pretrial motions directed to that first superseding indictment. In any event, whether timely raised or not, the claims have no merit for the reasons set out herein.

obscene material, and especially fictional material involving no actual persons, is protected by the First Amendment inasmuch as it constitutes a mere expression of ideas and has not been shown to be associated with any antisocial or illegal conduct. Defendant contends that, because no court has yet examined the extent to which such obscene material is linked to criminal conduct against persons, the mere assumption that such material is entitled to no constitutional protection is an insufficient basis upon which to suppress First Amendment rights. Defendant's argument is foreclosed by the Supreme Court's holding in Kaplan v. California, 413 U.S. 115 (1973), wherein the Court observed that

> States need not wait until behavioral experts or educators can provide empirical data before enacting controls of commerce in obscene materials unprotected by the First Amendment or by a constitutional right to privacy. We have noted the power of a legislative body to enact such regulatory laws on the basis of unprovable assumptions.

Id. at 120.

See also Paris Adult Theatre I, 413 U.S. at 69 ("We have directed our holdings, not at thoughts or speech, but at depiction and description of specifically defined sexual conduct that States may regulate within limits designed to prevent infringement of First Amendment rights.").

To the extent defendant argues that the lack of evidence associating illegal or antisocial conduct with fictional obscene

material compels this Court to apply the "clear and present danger" test to such material, the Supreme Court has repeatedly held that the clear and present danger test does not apply to obscenity. "[O]bscenity is not protected expression and may be suppressed without a showing of the circumstances which lie behind the phrase 'clear and present danger' in its application to protected speech." Ginsberg v. State of N.Y., 390 U.S. 629, 641 (1968) (citing Roth v. United States, 354 U.S. 476, 486-87 (1957); see also Roth, 354 U.S. at 486 (Court rejects argument "that the constitutional guarantees are violated because convictions may be had without proof either that obscene material will perceptibly create a clear and present danger of antisocial conduct, or will probably induce its recipients to such conduct.") (footnotes omitted). Cf. Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 569 (1980) (Rehnquist, J., dissenting) ("The First Amendment, however, does not always require a clear and present danger to be present before the government may regulate speech. . . . [I]t is well established that the government may regulate obscenity even though it does not present a clear and present danger."); Beauharnais v. People of State of Ill., 343 U.S. at 266 ("Certainly no one would contend that obscene speech . . . may be punished only upon a showing of [clear and present danger]."). As such, the Supreme Court has firmly held that the clear and present danger test does not apply to obscene material. It is not within this

Court's purview to renounce such Supreme Court precedent and determine otherwise. See Extreme Assocs., Inc., 431 F.3d at 156.

The fictional nature of obscene material does not change this result. Obscenity in any form is not protected by the First Amendment. United States v. Whorley, 550 F.3d 326, 337 (4th Cir. 2008) (citing Ashcroft v. Free Speech Coalition, 535 U.S. 234, 245-46 (2002); Miller, 413 U.S. at 24; Kaplan, 413 U.S. at 119). As discussed supra, the Supreme Court in Miller separated unprotected obscenity from protected speech with its three-part test. Miller limited regulation of such material to only those "*works* which depict or describe sexual conduct . . . [and] which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." Miller, 413 U.S. at 24 (emphasis added). To be considered obscene under Miller, the "works" need not depict or describe sexual conduct involving actual, real and identifiable persons; nor must they be works of nonfiction. See Kaplan, 413 U.S. at 118-19. In Kaplan, the Supreme Court examined the content of a plain cover book, which contained no pictures, and held that the Miller standard applied in determining whether expression by words alone can be legally obscene in the sense of being unprotected by the First Amendment. "As with pictures, films, paintings, drawings, and engravings, both oral utterance and the printed word have First

Amendment protection *until they collide with the long-settled position of this Court that obscenity is not protected by the Constitution*." Id. at 119-20 (emphasis added) (citing Miller, 413 U.S. at 23-25; Roth, 354 U.S. at 483-85). "When the [Supreme] Court declared that obscenity is not a form of expression protected by the First Amendment, no distinction was made as to the medium of the expression. Obscenity can, of course, manifest itself in conduct, in the pictorial representation of conduct, or in the written and oral description of conduct." Id. at 118-19 (citation omitted).[4]

Finally, defendant claims that before a grand jury can make a probable cause determination that offending images constitute obscenity proscribed by statute, the First Amendment requires such alleged obscene material to be viewed in the context of the entire work and not just as isolated images. Defendant argues, therefore, that because the grand jury here was presented with only a handful of isolated images instead of the "stories" and "larger storylines" from which the images were obtained, Count II of the second superseding indictment must be dismissed.

---

[4]Notably, the California statute in Kaplan which the Supreme Court found not to be unconstitutional on its face prohibited certain conduct as it related to "obscene matter." As noted by the Supreme Court, "matter" was defined by statute as "any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or other figure[.]" Kaplan, 413 U.S. at 116 n.2.

Count II of the second superseding indictment is a plain, concise and definite statement of the essential facts constituting the offense charged and complies in all respects with Fed. R. Crim. P. 7(c).  To the extent defendant claims there was insufficient evidence presented to the grand jury upon which a probable cause determination could be made to charge defendant with a violation of 18 U.S.C. § 1466A, the motion should be denied.  An indictment valid on its face is immune from attack by such claims.  Costello v. United States, 350 U.S. 359 (1956).  To the extent that the defendant would have benefitted from the presentation of the "storylines" or "stories" to the grand jury, the indictment is not subject to dismissal even if the images were not presented to the grand jury in such context.  United States v. Williams, 504 U.S. 36, 51 (1992).  "[R]equiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body."  Id.  The Court should likewise decline defendant's invitation to make a pretrial determination as to whether the material alleged in Count II to have been received by him constitutes obscene material.  Such question is one for the jury to decide.  See Miller, 413 U.S. at 26, 26 n.9; see also Smith v. United States, 431 U.S. 291 (1977); United States v. Handley, 564 F. Supp. 2d 996, 1009 (S.D. Iowa 2008).

Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Dismiss [Count II] Based on Strict Scrutiny (Doc. #96) be denied.

**IT IS FURTHER RECOMMENDED** that defendant's Motion to Declare 18 U.S.C. § 1466A Unconstitutional as Applied to Fictional Works or, in the Alternative, to Dismiss the Indictment for Failure to Allege a Crime (Doc. #98) be denied.

The parties are advised that any written objections to this Report and Recommendation shall be filed not later than **September 28, 2009.** Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this __16th__ day of September, 2009.